CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 13 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| JACQUELINE M. WHALEN, | ) | |
| | ) | Civil Action No. 3:12CV00032 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| JAMES LARRY RUTHERFORD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Jacqueline M. Whalen filed this diversity action against James Larry Rutherford ("Rutherford"), Shelley Daniel Rutherford ("Daniel"),[1] Selene Finance, L.P. ("Selene"), and other unknown defendants. The case is presently before the court on the following motions: (1) Rutherford's motion to dismiss Count I of the amended complaint; (2) Daniel's motion to dismiss Count IV of the amended complaint or, in the alternative, motion for summary judgment; and (3) Selene's motion to dismiss the amended complaint. For the reasons set forth below, the motions filed by Rutherford and Daniel will be denied, and Selene's motion will be granted.

### Summary of the Facts

The following facts, taken from the plaintiff's amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Whalen resides on a horse farm in Nelson County, Virginia ("the Property"). She purchased the Property in 1978.

---

[1] Daniel is incorrectly named in the complaint as "Shelley Beckwith Daniel." Although the docket will be amended to reflect her correct name, the court will continue to refer to her as "Daniel" in this opinion.

Whalen met Rutherford in the 1980s, and they became romantically involved. The couple also began doing business together. On January 1, 1985, Whalen and Rutherford formed W&R Partnership, which was based at the Property. In addition to conducting the business of managing a horse farm and breeding operation, the scope of the partnership came to include real estate matters, as well as counseling and consulting services. Whalen alleges that the partnership agreement was verbally amended to provide for monthly payments to Whalen, which were intended to compensate her for managing the partnership's daily affairs and for providing counseling services to Rutherford.

The real estate component of W&R Partnership included the construction of a home in Boca Raton, Florida in 1985, which was subsequently occupied by Whalen and Rutherford. That home was sold in 1991, and its furniture was shipped to Virginia with the understanding that it would be placed in a house to be built by W&R Partnership, in which both Whalen and Rutherford would reside.

In 2002, Rutherford advised Whalen that he wished to proceed with the long-planned construction of a large home ("the Home") on the Property for the two to share. Rutherford repeatedly represented that he intended to make the Home his primary residence upon its completion. In August of 2003, at Rutherford's request, Whalen conveyed a joint tenancy in the Property to Rutherford.

Prior to the construction of the Home, Whalen insisted that the existing house was sufficient, and that she did not believe that the construction of the Home was necessary. Whalen alleges that she could not afford to pay for the Home herself, and that she would not have agreed for construction to begin without Rutherford's repeated assurances that he would pay for the

Home, make the Home his primary residence, and participate more fully in the day-to-day business of W&R Partnership.

As a result of repeated objections by Whalen, the size of the Home was reduced from over 13,000 square feet to approximately 4,800 square feet. Between 2007 and 2009, the Home was planned and constructed in accordance with Rutherford's plans and desires.

Unbeknownst to Whalen, Rutherford married defendant Daniel in March of 2007 with the intent to remain in Florida. Nonetheless, throughout that year, Rutherford continued to represent to Whalen that he intended to make the Home his primary residence upon its completion, and become more involved in W&R Partnership. Rutherford also made false representations on loan documents that he was not married, that he intended to occupy the Home, and that it would be his primary residence within 60 days of closing.

On November 19, 2007, Rutherford borrowed $1,467,725.00, and executed a note and deed of trust on the Property to secure the loan. Although Whalen was not a borrower on the note, she executed the deed of trust without knowledge of Rutherford's marriage to Daniel. Whalen alleges that she would not have executed the deed of trust if she had known about Rutherford's marriage or the fact that he did not intend to use the Home as his primary residence.

That same month, without disclosing his marriage, Rutherford provided Whalen with a copy of an agreement regarding the Property ("the First Agreement"), which delineated responsibilities for mortgage payments, insurance, taxes, maintenance, and other matters. Whalen signed the First Agreement on November 27, 2007, subject to the deletion of one paragraph, which allegedly failed to reflect a verbal agreement that required Rutherford to pay for maintenance and insurance.

On December 3, 2007, Rutherford, through counsel, presented Whalen with a second agreement ("the Second Agreement"), and emphasized that Whalen had to sign it immediately "or the whole deal would fall through." (Am. Compl. ¶ 48.) Whalen alleges that Rutherford knew that the terms of the Second Agreement were substantially changed from the First Agreement, and that they were much less favorable to Whalen than the verbal agreement upon which the First Agreement was based.[2] Whalen further alleges that Rutherford concealed the material differences from her, and that he did not allow her to read the Second Agreement before signing it.

From December of 2007 to the spring of 2009, Rutherford had the Home constructed on the Property. In September of 2009, Whalen finally learned that Rutherford had married Daniel in March of 2007, and that he would not be using the Home as his primary residence or more actively participating in W&R Partnership.

Whalen alleges that Rutherford made payments on the note pursuant to the terms of the First Agreement until March of 2010. At that point, Rutherford stopped making payments, putting the Home and Property in foreclosure. Rutherford also stopped making payments to Whalen to compensate her for services rendered in furtherance of the partnership.

Whalen claims that Daniel had a role in the payments being ceased. Whalen alleges that Daniel did not approve of Rutherford using marital assets to make payments on the note for the Home or to Whalen in accordance with the existing contracts, and that Daniel intentionally interfered with those contracts for her own personal benefit.

---

[2] For instance, Whalen asserts that the Second Agreement "shift[ed] responsibility for paying the mortgage, taxes, and insurance on the Property from Rutherford to Whalen, provided for any rental profits to go solely to Rutherford, and otherwise shifted liabilities and benefits under the agreement to Rutherford's benefit and Whalen's detriment." (Am. Compl. ¶ 51.)

4

Whalen alleges that she has been damaged as a result of Rutherford and Daniel's conduct. Whalen further alleges, upon information and belief, that Selene "has taken steps to foreclose on the Property and sell same because of the unlawful acts of Rutherford." (Am. Compl. ¶ 58).[3]

## Procedural History

Whalen filed the instant action against Rutherford, Daniel, and Selene on June 29, 2012. In her amended complaint, she asserts the following claims under Virginia law: fraud by Rutherford as to the Second Agreement (Count I); breach of quasi-contract by Rutherford (Count II); breach of contract by Rutherford (Count III); and tortious interference with contract by Daniel (Count IV). Whalen seeks compensatory damages from Rutherford and Whalen totaling more than $350,000.00. Whalen also seeks orders enjoining Selene from foreclosing on the Property, and setting aside the deed of trust and other loan documents executed by Whalen.

This case is not the first civil action that Whalen has filed in connection with the underlying facts. In 2011, Whalen filed suit against Rutherford, Selene, and others in the Circuit Court of Nelson County, asserting claims of actual fraud, constructive fraud, statutory conspiracy, common law conspiracy, intentional infliction with business expectancy, breach of contract, breach of quasi-contract, and breach of fiduciary duty. On May 4, 2012, the Circuit Court entered an order sustaining in part and overruling in part Rutherford's demurrer, and sustaining demurrers filed by other defendants. In the same order, the Circuit Court granted in part and denied in part Whalen's motion for leave to file an amended complaint. On June 18, 2012, Whalen moved for entry of "an order of nonsuit as to all of Plaintiff's claims . . . against

---

[3] Selene explains in the brief in support of its motion to dismiss that it is the subservicer and authorized agent of DLJ Mortgage Capital, Inc. ("DLJ"). The deed of trust signed by Rutherford and Whalen, and the note secured by the deed of trust, were assigned to DLJ by Branch Banking & Trust Company ("BB&T"), the bank that furnished the loan to Rutherford.

5

each and every defendant because the Plaintiff desires to bring a case in Federal Court that comprises claims pending in this action." (Docket No. 37-7.) The motion was granted by the Circuit Court on July 3, 2012.

This case is presently before the court on motions to dismiss filed by Rutherford and Selene, and Daniel's motion to dismiss and, in the alternative, motion for summary judgment. The court held a hearing on the defendants' motions on November 16, 2012.

### Standards of Review

The defendants' motions to dismiss are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under this rule, the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words, the factual allegations (taken as true) must 'permit the court to infer more than the mere possibility of misconduct.'" A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (finding summary judgment appropriate "after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

## Discussion

I.      **Rutherford's Motion to Dismiss**

Rutherford has moved to dismiss Count I of the amended complaint, in which Whalen alleges that Rutherford fraudulently induced her to sign the Second Agreement. To support this claim, Whalen alleges that, prior to directing counsel to obtain Whalen's signature on the Second Agreement, Rutherford falsely represented to Whalen that the Second Agreement was substantially similar to the First Agreement, except for the fact that it incorporated the change that Whalen had made to the First Agreement. Whalen also alleges that Rutherford falsely represented to Whalen that he was still single, that he intended to make the Home his primary residence, and that he intended to more actively participate in W&R Partnership. Whalen alleges that Rutherford made the false representations with the intent to mislead Whalen, and that she relied upon the false representations when she signed the Second Agreement. Whalen alleges that, from December 3, 2007 through June 2011, neither Rutherford nor his associates provided her with a copy of the Second Agreement or an opportunity to read the agreement. Whalen contends that she trusted that the Second Agreement was what Rutherford purported it to be, based on their longstanding relationship. Whalen alleges that she did not discover the fraud until after filing suit in state court, when she obtained a copy of the Second Agreement through discovery. Whalen further alleges that she was damaged as a result of Rutherford's false representations in relation to the Second Agreement.

In moving to dismiss Count I, Rutherford makes three primary arguments: (1) that the claim is barred by the doctrine of res judicata; (2) that that the claim is barred by the economic

7

loss rule; and (3) that the claim is untimely. For the following reasons, the court finds each of these arguments unpersuasive.[4]

### A. Res Judicata

Rutherford first argues that the fraud claim is barred by the doctrine of res judicata, in light of the Circuit Court's rulings in the previous action. Because the previous action "was filed and disposed of in Virginia state court, [this court must] must look to Virginia's res judicata doctrine" in considering this argument. Artis v. Norfolk & Western Ry., 204 F.3d 141, 147 (4th Cir. 2000); see also Laughlin v. Morauer, 849 F.2d 122, 126 (4th Cir. 1988) ("[I]n a diversity case Virginia law governs the preclusive effect given to the judgment of a Virginia court.").

In Virginia, the doctrine of res judicata is defined in Rule 1:6 of the Rules of the Supreme Court of Virginia. Rule 1:6 provides as follows:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction, or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceedings depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6(a). Therefore, for res judicata to apply and prevent the instant fraud claim from going forward, the claim (1) must have been decided on the merits by a final judgment in state court, or (2) arise from the same conduct, transaction, or occurrence as another claim decided on the merits by a final judgment in state court.

Applying the standard set forth in Rule 1:6, the court concludes that res judicata does not apply to Whalen's claim that Rutherford fraudulently induced her to sign the Second Agreement.

---

[4] To the extent Rutherford also challenges the sufficiency of Whalen's allegations, the court concludes that her claim of fraud in the inducement of the Second Agreement is "plausible on its face." Iqbal, 556 U.S. at 678.

8

This claim was not asserted in the original complaint filed in state court. When Rutherford moved for leave to amend her complaint to include the claim, the state court denied the motion on the basis that the amendment raised a new substantive cause of action pertaining to the Second Agreement. Whalen v. Rutherford, Case No. CL11000184-00, 2012 Va. Cir. LEXIS 42, at*2 (Letter Op. Mar. 16, 2012) (citing Vines v. Branch, 418 S.E.2d 890 (Va. 1992) for "[t]he general rule . . . that amendments to pleadings will only be permitted where they seek a determination of the same subject matter of the controversy originally pleaded"). Thus, this particular claim was not "decided on the merits" in state court. Va. Sup. Ct. R. 1:6(a).

The court also concludes that Count II does not arise from the same conduct, transaction, or occurrence as another claim decided on the merits "by a final judgment" in state court. Va. Sup. Ct. R. 1:6(a). In arguing to the contrary, Rutherford emphasizes that the state court sustained his demurrer to Count I of the original complaint, which asserted a claim for actual fraud and included some of the same allegations in the instant case. While the court agrees with Rutherford that the order sustaining the demurrer was a decision on the merits of that claim, the order was not a "final judgment" for purposes of Rule 1:6.

The Supreme Court of Virginia has "made it clear" that an order sustaining a demurrer is not necessarily a final order. Miller v. Greene County Sch. Bd., 77 Va. Cir. 148 (Va. Cir. Ct. 2008) (citing Norris v. Mitchell, 495 S.E.2d 809, 811 (Va. 1998)). If the order "merely sustains" the demurrer, it is not final. Norris, 495 S.E.2d at 811. "[T]o be final, it must go further and dismiss the case." Id. (emphasis added); see also Bibber v. McCreary, 73 S.E.2d 382, 383 (Va. 1952) ("This court has consistently held that an order merely sustaining or overruling a demurrer to a declaration or motion for judgment is not final. An order sustaining such a demurrer, in order to be final within the meaning of [the Code], must go further and dismiss the case.");

9

Gillespie v. Coleman, 36 S.E. 377 (Va. 1900) ("The sustaining . . . of a demurrer to a declaration is not final. To make it final . . . , there must be a judgment of dismissal.").

In this case, the state court's May 4, 2012 order sustained in part and overruled in part Rutherford's demurrer to Whalen's original complaint, and granted in part and denied in part Whalen's motion for leave to file an amended complaint. The order was not a "final judgment" as required by Rule 1:6 and, thus, Whalen's current claim for fraudulent inducement is not barred by the doctrine of res judicata.[5] See Close v. City of Norfolk, 2011 Va. Cir. LEXIS 101, at *10 (Va. Cir. Ct. Apr. 12, 2011) (holding that "the Court's ruling sustaining in part the City's Demurrer was not a final decree, and the parties are not barred by res judicata from addressing aspects of the cause of action ruled upon by the Court in its December 23, 2009 opinion); Carter v. Brooks, 77 Va. Cir. 363, 367 (Va. Cir. Ct. 2009) (holding that an order sustaining a demurrer was not a final judgment, since it did not contain any language dismissing the case, and, thus, that res judicata did not apply); see also Paschall v. CBS Corp., No. 3:11CV431, 2011 U.S. Dist. LEXIS 104725, at *12 (E.D. Va. Sept. 15, 2011) (holding that a demurrer order, which only addressed a portion of the plaintiff's claims and left the remaining claims intact, was not a final order under Virginia law).

### B. Economic Loss Rule

Rutherford next contends that Whalen's claim of fraudulent inducement is barred by the economic loss rule, under which "losses suffered as a result of the breach of a duty assumed only

---

[5] As set forth above, the Circuit Court ultimately granted plaintiff's motion for entry of "an order of nonsuit as to all of Plaintiff's claims . . . against each and every defendant . . . ." (Docket No. 37-7, 8.) Although the order granting the nonsuit and striking the matter from the Circuit Court's docket was a final order in the case, it was not a "final judgment on the merits." Va. Sup. Ct. R. 1:6; see also Carter v. Brooks, 77 Va. Cir. 363, 367-68 (Va. Cir. Ct. 2009) ("In summary, the order sustaining the demurrer on these two counts was a decision on the merits, but was not a final judgment. The order granting the nonsuit constitutes a final judgment with respect to these two counts, but is not a decision on the merits. Absent a final judgment on the merits, res judicata and Rule 1:6 do not apply to the instant case.").

10

by agreement, rather than a duty imposed by law, remain the sole province of contracts." Filak v. George, 594 S.E.2d 610, 613 (Va. 2004). The Supreme Court of Virginia has recognized that "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort." Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 295 (Va. 2007). "To avoid turning every breach of contract into a tort, however, [the Court has] enunciated the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Id.; see also Richmond Metro. Auth. v. McDevitt St. Bovis, 507 S.E.2d 344, 347 (Va. 1998) (holding that, where "each particular misrepresentation by [the defendant] related to a duty or an obligation that was specifically required by the [parties'] contract" and the "source of any duty breached [was] solely [that contract]," the plaintiff's claims sounded only in contract).

Applying these principles, the court concludes that Rutherford's reliance on the economic loss rule is misplaced. Whalen alleges that Rutherford made statements that he knew were false in order to induce her to sign the Second Agreement. While Whalen and Rutherford were parties to a partnership agreement and possibly other contracts at the time the Second Agreement was signed, "this is not a case in which no cause of action would exist but for the violation of contractual duties between the parties." Bennett v. Bank of Am., N.A., No. 3:12CV34, 2012 U.S. Dist. LEXIS 54725, at *27 (E.D. Va. Apr. 18, 2012) (holding that the plaintiff's fraud claim was not barred by the economic loss rule). Instead, Whalen's cause of action for fraud in relation to the Second Agreement stems from a duty imposed by tort law, namely "the duty not to commit fraud." Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 447 (4th Cir. 1990); see also Abi-Najm v. Concord Condominium, LLC, 699 S.E.2d 483, 489-90 (Va. 2010) (emphasizing that "a false representation of a material fact, constituting inducement to the

11

contract, on which the [party] had a right to rely, is always ground for rescission of the contract" and "also ground for an action for damages," and that the plaintiff's claim for fraudulent inducement was not barred by the economic loss rule); Barnette v. Brook Rd, Inc., 429 F. Supp. 2d 741, 750 (E.D. 2006) ("[A] statement, known to be false when uttered, that is made with the intent to induce someone to enter a contract, can support a claim of fraud that is independent of a breach of contract."). Accordingly, Count I is not barred by the economic loss rule.

### C. Statute of Limitations

For his final argument, Rutherford contends that Count I is barred by the two-year statute of limitations set forth in Virginia Code § 8.01-243A. While Rutherford acknowledges that the statute of limitation is tolled until such fraud "is discovered or by the exercise of due diligence reasonably should have been discovered," Va. Code § 8.01-249(1), Rutherford argues that Whalen failed to act with due diligence and, thus, that the tolling statute does not save her claim.

The Supreme Court of Virginia has held that "[t]he language 'by the exercise of due diligence reasonably should have been discovered,' as used in Code § 8.01-249, means '[s]uch measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances . . . .'" STB Marketing Corp. v. Zolfaghari, 393 S.E.2d 394, 397 (Va. 1990) (quoting Black's Law Dictionary 411 (rev. 5th ed. 1979)). "Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case." Id.

In this case, as set forth above, Whalen alleges that Rutherford neither provided her with a copy of the Second Agreement nor permitted her to read it, and that she did not discover the fraud until after filing suit in state court, when she obtained a copy of the Second Agreement through discovery. Assuming the truth of Whalen's allegations, and having considered the

12

particular circumstances detailed in Whalen's complaint, including the parties' longstanding relationship and Rutherford's alleged misconduct, the court is unable to conclude, at this stage of the proceedings, that Whalen's claim of fraud is barred by the statute of limitations. See GIV, LLC v. IBM, No. 3:07CV067, 2007 U.S. Dist. LEXIS 30168, at *16 (E.D. Va. Apr. 24, 2007) (finding that it would be premature to dismiss the plaintiff's claim based on the statute of limitations, since "the question of . . . due diligence depends upon the facts of each case"); Pennsylvania Life Ins. Co. v. Bumbrey, 665 F. Supp. 1190, 1202 (E.D. Va. 1987) (noting that "issues of when a fraud should reasonably have been discovered, as with most issues of reasonableness, are typically best left to the jury"). Accordingly, for all of the reasons stated, Rutherford's motion to dismiss Count I will be denied.

## II. Daniel's Motion to Dismiss or, in the Alternative, for Summary Judgment

Daniel is named in Count IV of the amended complaint, in which Whalen asserts a claim of tortious interference with contract. Daniel has moved to dismiss the claim under Rule 12(b)(6) on the basis that the plaintiff's allegations are insufficient under Twombly and Iqbal. In the alternative, Daniel has moved for summary judgment.

To prevail on a claim for tortious interference with a contract or business expectancy in Virginia, a plaintiff must show:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Duggin v. Adams, 360 S.E.2d 832, 835 (Va. 1987) (quoting Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985)).

13

Upon review of the amended complaint, the court is constrained to conclude that Whalen's allegations of tortious interference are sufficient to withstand Daniel's motion to dismiss. To support her tortious interference claim, Whalen alleges that she and Rutherford were parties to contracts relating to W&R Partnership and the Home; that there was a reasonable probability of future economic benefit to Whalen from those contracts; that Daniel became aware of the continuing personal and contractual relationship between Rutherford and Whalen, and became upset that Rutherford was using marital assets to make payments in accordance with the contracts; that Daniel intentionally induced Rutherford to breach the contracts by directing Rutherford's agent to cease all payments to W&R Partnership and on the note for the Home; that Daniel intended to interfere with the contracts for her personal benefit; that it is reasonably certain that Rutherford would not have breached the contracts in the absence of Daniel's conduct; and that Whalen has been damaged as a proximate result of Daniel's actions. While some of these particular allegations are arguably conclusory, the court is of the opinion that the second amended complaint, in its entirety, contains sufficient factual content to state a plausible claim for relief against Daniel. Accordingly, Daniel's motion will be denied to the extent that it challenges the sufficiency of the allegations asserted with respect to Count IV.

To the extent Whalen's motion alternatively seeks summary judgment, the court concludes such motion must be denied as premature. As a general rule, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986). If a party believes that more discovery is necessary for her to demonstrate a genuine issue of material fact, the "proper course" is to file an affidavit pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why she cannot properly oppose a motion for summary

judgment without a chance to conduct discovery. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (discussing affidavit requirements of Rule 56(f)). "Nevertheless, in some cases courts have held that summary judgment was premature even when the opposing party failed to file [an] affidavit." Id.

In this case, pursuant to the court's September 11, 2012 scheduling order, the parties have until March 29, 2013 to complete discovery. Daniel filed her motion for summary judgment on October 12, 2012, only four weeks after the court entered the scheduling order, and over five months before discovery was scheduled to end. Although Whalen has not filed an affidavit pursuant to Rule 56(d), she has filed a brief opposing the motion on the basis that she has not had an adequate opportunity to conduct discovery relevant to her tortious interference claim. As such, the court is of the opinion that Whalen's brief "serve[s] the same purpose" as a Rule 56(d) affidavit, Investors Title Ins. Co. v. Bair, 232 F.R.D. 254, 257 (D. S.C. 2005), and that summary judgment would be premature at this time. See Harrods, 302 F.3d at 244 (holding that the district court's grant of summary judgment was premature notwithstanding the opposing party's failure to file a Rule 56(f) affidavit, where discovery was ongoing and the nonmoving party informed the district court of its need to complete discovery). Accordingly, Daniel's motion to dismiss or, in the alternative, motion for summary judgment will be denied.

### III.    Selene's Motion to Dismiss

Finally, for the reasons discussed during the motions hearing, the court will grant Selene's motion to dismiss. Whalen's amended complaint asserts no causes of action against Selene, and she acknowledges in her brief in opposition to Selene's motion that "it does not appear legally possible for Selene to be held liable for the wrongs the Plaintiff has suffered at the hands of Rutherford and Daniel." (Docket No. 38 at 5.) While Whalen nonetheless contends

that she cannot be made "whole" without Selene being enjoined from foreclosing on the Property, she has cited no authority to support the proposition that she is entitled obtain relief from a party against which she has no viable claim. Having asserted no viable claim against Selene, the court is convinced that the amended complaint must be dismissed as to this defendant. See, e.g., Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1098 (11th Cir. 2004) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action . . . , regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim).").

## Conclusion

For the reasons stated, Rutherford's motion to dismiss will be denied; Daniel's motion to dismiss or, in the alternative, motion for summary judgment will be denied; and Selene's motion to dismiss will be granted.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of December, 2012.

_____
Chief United States District Judge