CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 04 2013

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JACQUELINE M. WHALEN,          )
                               )
    Plaintiff,                 )   Civil Action No. 3:12CV00032
                               )
v.                             )   **MEMORANDUM OPINION**
                               )
JAMES LARRY RUTHERFORD,        )   By: Hon. Glen E. Conrad
                               )   Chief United States District Judge
    Defendant.                 )

On July 18, 2013, a jury found in favor of the defendant on the plaintiff's remaining claim for fraudulent concealment. The plaintiff has now moved for judgment as a matter of law on that claim. Alternatively, she argues that the court should amend the pleadings to conform to the evidence at trial, and grant either judgment as a matter of law on a claim for breach of contract, or a new trial. For the reasons set forth below, the plaintiff's motion will be denied.

## Background

The plaintiff, Jacqueline M. Whalen, resides on a farm in Nelson County, Virginia (the "Property"). She met the defendant, James Larry Rutherford, a Florida resident, in 1977, and they became romantically involved in the early 1980s. Although the couple never married, they maintained a personal and business relationship for many years.

In 2003, Ms. Whalen granted Mr. Rutherford a joint tenancy interest in her farm, after they decided to build a larger home on the Property. Mr. Rutherford obtained a mortgage loan to finance the construction of the new home, which was secured by a deed of trust on the Property.

Prior to executing the deed of trust, Mr. Rutherford decided that it was necessary to draft an agreement governing the Property. On November 20, 2007, Mr. Rutherford signed an agreement regarding the Property (the "First Agreement"), which was drafted by an attorney in Florida. The

First Agreement provided, among other things, that Mr. Rutherford would "be responsible for (i) the payments due on the Mortgage; (ii) insurance on the Property; [and] (iii) taxes due on the Property." (First Agreement at 2.) The First Agreement was forwarded to Ms. Whalen for her review. Although Ms. Whalen signed the agreement, she struck through paragraph eight, which required her to "maintain property and casualty insurance on the Property for its full replacement cost." (Id.)

On November 30, 2007, Rutherford executed a second agreement regarding the Property (the "Second Agreement"), which was prepared by the same attorney. Unlike the First Agreement, the Second Agreement did not require Mr. Rutherford to make the mortgage payments. Instead, it provided that the mortgage payments would be made by Ms. Whalen, and that Mr. Rutherford would be responsible for reimbursing her. Ms. Whalen executed the Second Agreement and returned it to Mr. Rutherford.

Notwithstanding the terms of the Second Agreement, Mr. Rutherford continued to make the mortgage payments for over two years. However, the payments ceased in March of 2010, after Mr. Rutherford suffered significant financial difficulties. The lender ultimately initiated foreclosure proceedings, which were still pending when Ms. Whalen filed the instant action against Mr. Rutherford on June 29, 2012.

In Count I of her original complaint, Ms. Whalen alleged that Mr. Rutherford fraudulently induced her to execute the Second Agreement, which required her to make the mortgage payments. In Count II, Ms. Whalen asserted that Mr. Rutherford breached the First Agreement by failing to make the mortgage payments.

Mr. Rutherford subsequently moved to dismiss Count II on the basis that there was no meeting of the minds with respect to the First Agreement, since Ms. Whalen crossed out the eighth

paragraph prior to signing it. The court held a hearing on Mr. Rutherford's motion to dismiss on September 7, 2012. In response to questions from the court, plaintiff's counsel acknowledged that "there was never any agreement as to the first document" in its entirety, since Ms. Whalen refused to consent to paragraph eight. (Sept. 7, 2012 Hearing Tr. at 31-32.) Consequently, the court agreed with Mr. Rutherford that there was no basis to believe that there was a meeting of the minds as to the First Agreement and, thus, that the motion to dismiss Count II was well taken. See Byrum v. Bear Inv. Co., 936 F.2d 173, 175 (4th Cir. 1991) ("A material variance between the acceptance and the offer results in a rejection of the original offer and transforms the putative acceptance into a counter-offer."); Progressive Constr. Co. v. Thumm, 161 S.E.2d 687, 691 (Va. 1968) ("In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract.") (internal citation and quotation marks omitted).

The case proceeded to trial on Ms. Whalen's claim that she was fraudulently induced to sign the Second Agreement. During trial, Mr. Rutherford was questioned about the First Agreement and the paragraph that had been stricken by Ms. Whalen. Mr. Rutherford testified that when Ms. Whalen's requested change was brought to his attention, he told his employee, Jodie Bakes, to "go ahead and make the change[ ]." (Tr. of Rutherford's Trial Testimony at 49.) However, the attorney responsible for making the change instead prepared the Second Agreement, which modified not only paragraph eight, but also paragraph nine, by shifting responsibility for the mortgage payments to Ms. Whalen. The evidence at trial revealed that this particular change to paragraph nine resulted from a drafting error by the attorney. Nonetheless, both parties executed the Second Agreement.

At all times prior to trial, Ms. Whalen asserted that Mr. Rutherford fraudulently induced her to sign the Second Agreement by intentionally concealing the modification to paragraph nine. The jury found against her on that claim and judgment was entered in favor of the defendant.

Ms. Whalen subsequently filed the instant motion. The court held a hearing on the motion on August 19, 2013.

## Discussion

In seeking judgment as a matter of law or a new trial, Ms. Whalen argues that Mr. Rutherford's testimony at trial – that he advised his employee to make the changes that Ms. Whalen requested be made to the First Agreement – is contrary to the position that he took in obtaining dismissal of Count II of her original complaint, and that he should be judicially estopped from taking contrary positions. Relying on this argument, Ms. Whalen seeks judgment as a matter of law on her claim that Mr. Rutherford fraudulently induced her to sign the Second Agreement. Alternatively, she argues that the court should amend the pleadings to conform to the evidence at trial, and grant either judgment as a matter of law on a claim for breach of contract or a new trial. For the reasons that follow, the court concludes that the plaintiff's judicial estoppel argument is without merit, and that her motion must be denied.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). "[C]ourts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (internal citation and quotation marks omitted). In order for judicial estoppel to be applied, three elements must be satisfied:

> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.

Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) (internal citation and quotation marks omitted).

Upon review of the record, the court concludes that Mr. Rutherford has not taken inconsistent positions on the validity of the First Agreement and, thus, that the plaintiff is unable to satisfy the first element. As set forth above, Count II of Ms. Whalen's original complaint sought to enforce the First Agreement as written. In moving to dismiss that count, Mr. Rutherford argued that the First Agreement was not an enforceable contract, since Ms. Whalen crossed out an entire paragraph before returning it to him. Mr. Rutherford argued that Ms. Whalen's change to the First Agreement rendered it a counter-offer and nothing more, since the change was not initialed and accepted by both parties. See Byrum, 936 F.2d at 175.

At trial, Mr. Rutherford testified that he was willing to make the particular change requested by Ms. Whalen, and that he communicated this to his employee. However, rather than simply making the change that Ms. Whalen requested, Mr. Rutherford's attorney drafted the Second Agreement, which shifted responsibility for the mortgage payments. Although the trial testimony indicated that this particular modification resulted from a drafting error by the attorney, both Mr. Rutherford and Ms. Whalen signed and accepted the Second Agreement.

Throughout the course of this case, Mr. Rutherford has consistently maintained that the First Agreement is unenforceable. While Ms. Whalen argues that the defendant's trial testimony was inconsistent with this position, and that it established that the First Agreement is the "binding

contract that [Mr. Rutherford] breached" (Pl.'s Mem. in Supp., Docket No. 112 at 13), the court is unable to agree.

Under Virginia law, "mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts." Phillips v. Mazyck, 643 S.E.2d 172, 175 (Va. 2007) (internal citation and quotation marks omitted). "Mutual assent is determined 'exclusively from those expressions of [the parties'] intentions which are communicated between them.'" Moorman v. Blackstock, Inc., 661 S.E.2d 404, 409 (Va. 2009) (quoting Lucy v. Zehmer, 84 S.E.2d 516, 522 (Va. 1954)). Thus, "[a] binding contract is not formed until the offeree communicates an acceptance to the offeror." Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 385 S.E.2d 612, 613 (Va. 1989).

Applying these principles, the court remains convinced that the First Agreement is not enforceable, since Mr. Rutherford did not initial Ms. Whalen's modification or otherwise communicate his assent to her. Instead, he forwarded Ms. Whalen the Second Agreement, which contained different terms, and she proceeded to sign that agreement. Contrary to Ms. Whalen's assertions, Mr. Rutherford's testimony regarding his internal communications with employees, without more, is insufficient to establish that the First Agreement is a valid and binding contract. See Hodges, 385 S.E.2d at 613.

Mr. Rutherford has also consistently argued, throughout the course of litigation, that the Second Agreement is enforceable, since it was executed by both parties. His trial testimony was not inconsistent with this position. While the evidence at trial revealed that the Second Agreement contains a drafting error, the plaintiff has not sought to have it reformed or avoided and, thus, it remains valid and binding. See Ware v. Scott, 257 S.E.2d 855, 857-58 (Va. 1979) (explaining that a contract containing a mutual mistake is voidable at the option of the adversely

affected party) (emphasis added); see also Black's Law Dictionary 1709 (9th ed. 2009) (defining "voidable" as "[v]alid until annulled"); Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., 430 F.3d 906, 911 (8th Cir. 2005) ("A voidable contract is valid unless legally voided at the option of one of the parties.") (internal citation and quotation marks omitted); McCain v. Cox, 531 F. Supp. 771, 782 (N.D. Miss. 1982) ("It is, of course, familiar law that a . . . voidable contract is valid and binding until it is avoided by the person entitled to avoid it.").

For these reasons, the doctrine of judicial estoppel has no application in the instant case, and Ms. Whalen is not entitled to judgment as a matter of law or a new trial. Accordingly, her motion will be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 4th day of October, 2013.

/s/ Glen Conrad
Chief United States District Judge